

Potter
Anderson
Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

Philip A. Rovner
Partner
provner@potteranderson.com
(302) 984-6140 Direct Phone
(302) 658-1192 Fax

May 11, 2016

**BY CM/ECF & HAND DELIVERY**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
U.S. Courthouse
844 North King Street
Wilmington, DE 19801

**PUBLIC VERSION**
May 24, 2016

Re: *Blackbird Tech LLC related cases*, C.A. Nos. 15-53, -56 through -64-RGA

Dear Judge Andrews:

We respectfully submit this letter on behalf of the Defendants in support of their Proposed Protective Order (D.I. 36-1)[1], and in response to Blackbird's May 9, 2016 letter.

**I.  Blackbird's In-House Counsel Admit They Engage in Competitive Decisionmaking.**

Ms. Verlander is the President, CEO, and co-founder of Blackbird. (D.I. 45-1 at ¶ 1.) Mr. Freeman is the Vice President, Head of Litigation, and co-founder of Blackbird. (D.I. 45-2 at ¶ 1.) For their small company of six full time employees and five part-time employees, "[t]he acquisition of patents is essential to Blackbird's business" and is "a vital part of [its] business model." (D.I. 45-1 at ¶¶ 2, 6, 19; D.I. 45-2 at ¶¶ 2, 5, 20.)

---

[1] All D.I. citations are to the docket in Case No. 15-53-RGA.

May 11, 2016 PUBLIC VERSION May 24, 2016
Page 2

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ they "would have a difficult time compartmentalizing [their] knowledge" of Defendants' financial and technical information. *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159-62 (D. Del. 1999) (precluding in-house counsel from reviewing confidential information because he could use it to make "strategic acquisitions"); *see also U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *Inventor Holdings, LLC v. Google, Inc.*, C.A. No. 14-186, 2014 WL 4369504, at *1-2 (D. Del. Aug. 27, 2014) (adopting the defendant's prosecution bar because as the "plaintiff is a non-practicing entity it is difficult to envision circumstances in which the *inadvertent* disclosure of highly confidential information would not be at risk" where the plaintiff will acquire patents in the future) (emphasis in original). Also, they could review Protected Information from Defendants such as Service Lighting and Electrical Supplies, Inc., who is an on-line vender, to assert the patent-in-suit against third-party suppliers in the future.

Ms. Verlander does not dispute that she is involved in patent prosecution, but she downplays her involvement to be a "very high level supervisory role" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Given Blackbird's representation that it cannot afford to litigate without their involvement, Blackbird also likely would be unable to engage in post-grant proceedings without them. Ms. Verlander and Mr. Freeman, despite his contrary claim, have experience practicing before the Patent Office. (Ex. B at 1 ("Ms. Verlander "regularly counseled clients on strategies relating to domestic and foreign patent procurement, post-grant Office proceedings, portfolio reviews and competitive analysis."); Ex. C at 1 (Mr. Freeman "has litigated patent cases in a wide variety of technologies in front of . . . the U.S. Patent and Trademark Office.").) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Ms. Verlander, as the CEO, presumably has traditional corporate duties and decisionmaking activities, but she omitted these duties from her declaration. (*See* D.I. 45-1 at ¶¶ 1-28.) Mr. Freeman as the Vice President is "monitoring company financials, and communicating with outside stakeholders." (D.I. 45-2 at ¶ 28.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Freeman, and presumably Ms. Verlander, likely would be unable to compartmentalize the Defendants' Protected Information, such as sales and revenue, when advising stakeholders about their investment in litigation against the Defendants and the acquisition of any patents to assert against the Defendants in the future.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

D.I. 45-2 at ¶¶ 8, 19; D.I. 45-3 at ¶ 7).[2] Contrary to their assertion that they would have "no ability" to participate in settlement without access to Defendants' financials (D.I. 45-1 at ¶ 18; D.I. 45-2 at ¶ 19), corporate personnel and in-house counsel routinely participate in settlement and licensing discussions in litigation, through mediation and with Judges, without accessing their opponent's financials. Blackbird sued numerous competitors in the LED lighting industry. As this Court recognized during the Hearing, Blackbird's in-house counsel would be unable to compartmentalize one defendant's Protected Information when negotiating settlements, licenses, or royalty rates with competitors and would put each defendant at a competitive disadvantage against competitors. (*See* Ex. A at 43:7-46:8); *see also Apeldyn Corp. v. AU Optronics Corp.*, C.A. No. 08-568-SLR, 2012 WL 2368796, at *7-8 (D. Del. June 13, 2012) (precluding a non-practicing entity's in-house counsel from reviewing protected information because the defendant would suffer a competitive disadvantage if protected information inadvertently influenced the in-house counsel in licensing decisions with defendant's competitors).

Blackbird's patent portfolio purposefully "span[s] numerous technology areas" and is "not to be concentrated in one technological area." (D.I. 45-2 at ¶ 6; D.I. 45-1 at ¶ 7); *Inventor Holdings, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 13-96, 2014 WL 4370320, at *2-3 (D. Del. Aug. 27, 2014) (adopting the defendant's broader patent prosecution bar because with a non-practicing entity "the risk is that the ambitions of the plaintiff are quite broad in terms of the reach of the technology they own"). Blackbird's in-house counsel thus do not have specialized knowledge about LED lighting technology that is necessary for Blackbird to litigate these cases.

**II.    Blackbird's Proposed "Walling Off" Is Insufficient to Protect the Defendants.**



Ms. Verlander and Mr. Freeman, as company officers, perform such varied duties that a complete bar to their access of Defendants' Protected Information is the only way to prevent any unintentional use thereof.

Blackbird's request to allow its in-house counsel to access Defendants' Protected Information is based solely on its desire to litigate cheaply. Defendants were forced to hire outside counsel on a non-contingent basis. The harm to Defendants from Blackbird employees accessing their Protected Information outweighs Blackbird's desire to maximize profits.

---

[2] Mr. Thompson joined Blackbird in February 2016 (Ex. D), and nothing prevents his role from expanding to include patent acquisition activities.

May 11, 2016  PUBLIC VERSION May 24, 2016  
Page 4

                        Respectfully,

                        */s/ Philip A. Rovner*

                        Philip A. Rovner (#3215)

cc:    All Counsel of Record – by CM/ECF

1223645